# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

JOSEPH H. ROSS,

    Plaintiff,

v.                                                    CIVIL ACTION NO.  2:19–cv–00358

PRUDENTIAL INSURANCE COMPANY
OF AMERICA, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Remand.  (ECF No. 6.)  For the reasons discussed more fully below, the Court **GRANTS** the motion.

### I.  BACKGROUND

This case arises out of a dispute between Plaintiff and his life insurance providers.  (*See* ECF No. 1–1 at 4–22.)  The complaint alleges Plaintiff holds five insurance policies issued by either Prudential Insurance Company of America or its subsidiary Pruco Life Insurance Company (collectively "Defendants").[1]  (*Id.* at 5, ¶ 6.)  These policies include a Waiver of Premium Benefits ("Waiver") which pays the premiums for the policies in the event Plaintiff becomes disabled and is unable to work.  (*Id.* ¶ 7.)

In 1992, Plaintiff became totally disabled and was unable to work due to complications from a traumatic brain injury.  (*Id.* at 5–6, ¶ 9.)  Defendants paid the premiums for these policies

---

[1] Defendants Christina Moran, Lisa Maloney, and Renelyn Marie D. Burguete are employees of either Prudential or Pruco and join Prudential and Pruco in their filings.  (ECF No. 9 at 1–2; *see also* ECF No. 1–1 at 5, ¶ 4.)

for twenty–four years due to Plaintiff's disability, but, in 2017, Plaintiff received a series of communications from Defendants requesting additional documentation to support continued eligibility for the Waiver. (*Id.* at 6, ¶¶ 11–16.) After a dispute, Defendants began requiring Plaintiff to make premium payments on all his policies. (*Id.* at 12, ¶¶ 46–47.)

On March 29, 2019, Plaintiff filed his Complaint in the Circuit Court of Kanawha County, West Virginia. (*Id.* at 4.) Defendants removed the case to this Court on May 6, 2019. (ECF No. 1.) In the Notice of Removal, Defendants assert that the sole basis for this Court's subject–matter jurisdiction is diversity pursuant to 28 U.S.C. § 1332. (*Id.* at 2, ¶ 3.)

Plaintiff filed the current motion to remand on June 6, 2019, in which he argues this Court lacks subject–matter jurisdiction because the amount in controversy is below the $75,000 requirement for diversity jurisdiction. (ECF No. 7 at 4.) Defendants filed their Response on June 21, 2019. (ECF No. 9.) Plaintiff filed his Reply on June 27, 2019. (ECF No. 10.) As such, this motion is briefed and ripe for the Court's consideration.

## II. *LEGAL STANDARD*

As relevant here, this Court "ha[s] original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1); *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) ("Since diversity always vests original jurisdiction in the district courts, diversity also generates removal jurisdiction."). "[A]n action initiated in a state court can be removed to federal court only if it might have been brought in federal court originally." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003) (alteration and internal quotation marks omitted); *see* 28 U.S.C. § 1441(a). Because removal of civil cases from state to federal court infringes state sovereignty, federal courts

strictly construe the removal statute and resolve all doubts in favor of remanding cases to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." (citation omitted)).

"If the plaintiff challenges removal, however, the defendant 'bears the burden of demonstrating that removal jurisdiction is proper.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (quoting *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008)). If the defendant's assertion of the amount of controversy is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount–in–controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "This test is framed alternatively as a requirement that a defendant demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996) (citation omitted). "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000," *Judy v. JK Harris & Co.*, No. 2:10–cv–01276, 2011 WL 4499316, at *3 (S.D. W. Va. Sept. 27, 2011) (citation omitted), and must supply evidence regarding the amount at issue. *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001).

In evaluating a party's claim to federal jurisdiction, a court should look toward the circumstances as they existed at the time the notice of removal was filed. *See Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008) ("[F]ederal jurisdiction . . . is

fixed at the time the . . . notice of removal is filed." (citation omitted)). "When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to 'show ... what the stakes of litigation ... are given the plaintiff's actual demands.'" *Scott*, 856 F.3d at 194 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). To calculate the amount in controversy, a court may consider the entire record and make an independent evaluation of whether the amount in controversy is satisfied. *See Grubb v. Jos. A. Bank Clothiers, Inc.*, No. 2:05–0056, 2005 WL 1378721, at *5 (S.D. W. Va. June 2, 2005) (citation omitted).

## III. DISCUSSION

### A. Amount in Controversy

The sole issue before the Court is whether the amount in controversy exceeds the jurisdictional minimum of $75,000.[2] Plaintiff does not specify in the Complaint the amount of damages he seeks so the Court must determine whether Defendants have introduced sufficient facts to prove it is "more likely than not" that the amount in controversy exceeds the jurisdictional minimum. *Landmark Corp.*, 945 F. Supp. at 935. First, Defendants argue the amount in controversy is $1,775,000, which is the total contract value of the five policies at issue. (ECF No. 9 at 1.) In the alternative, Defendants argue that, if the claim is less than the total value of these policies, the amount in controversy is still met because the contract premium for the five policies is $14,401 per year, and Defendants further argue that Plaintiff claims he is being wrongly denied the Waiver for all the years moving forward. (*Id.* at 4.) Further, Defendants state that any award

---

[2] Defendants assert—and Plaintiff does not contest—that there is complete diversity between the parties. (*See* ECF No. 1–1 at 4–5, ¶¶ 2–4.)

may be supplemented with punitive damages, and Plaintiff is also seeking attorney's fees and damages for emotional distress, annoyance, and inconvenience. (*Id.*)

In his motion to remand, Plaintiff argues removal was improper because the amount in controversy is only $3,798, which is the premium payments Plaintiff made in protest before the case was filed. (ECF No. 7 at 6.) Plaintiff further states that Defendants have offered no factual basis to establish a claim for contingent attorney's fees and expenses and any argument that the annoyance and inconvenience damages could make up the difference is "pure speculation." (*Id.* at 8.)

When the amount in controversy is not apparent on the face of a complaint, the Court may consider several factors and make an independent evaluation of whether the amount in controversy has been satisfied. *See Weddington v. Ford Motor Credit Co*., 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999). In considering whether Defendants have met the preponderance of the evidence standard, the Court may consider "the type and extent of the plaintiff's injuries and possible damages recoverable . . . ." *See Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 964 (S.D. W. Va. 2011) (quoting *McCoy*, 174 F. Supp. 2d at 489). "If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof." *Scaralto*, 826 F. Supp. 2d at 968 (citation omitted). "The amount in controversy is not what the plaintiff, his lawyer, or some judge thinks a jury would award the plaintiff assuming he prevails on the merits. It is what the plaintiff claims to be entitled to or demands." *Id.* at 967.

The Complaint alleges three counts: breach of contract, bad faith, and unfair trade practices. The Complaint requests a broad array of relief including compensatory damages, in excess of the jurisdiction amount for the Circuit Court of Kanawha County, West Virginia, as well

as "attorney fees, costs, net economic losses, consequential damages, and the general damages that the Plaintiff sustained as a result of Defendant[s]. . . breach of contract." (ECF No. 1–1 at 21–22.) For the alleged bad faith, Plaintiff requests compensatory and punitive damages. (*Id.* at 19.) For the alleged violations of the West Virginia Unfair Trade Practices Act, Plaintiff again requests an award of both compensatory and punitive damages. (*Id.*) Finally, Plaintiff requests both "pre–judgment and post–judgment interest, and attorney's fees and costs incurred in pursuing this action." (*Id.*) Each is addressed in turn.

### 1. Alleged Breach of Contract

The only claim addressed in detail by either party is Plaintiff's breach of contract claim. As stated previously, Defendants assert that the amount in controversy is $1,775,000, which is the total contract value of the five policies at issue. (ECF No. 9 at 1.) This argument is faulty.

In the Complaint, Plaintiff argues he is entitled to the Waiver due to his continued disability and claims Defendants "were contractually obligated to provide the Plaintiff with Waiver of Premium Benefits and to pay the premiums for Plaintiff's Prudential policies." (ECF No. 1–1 at 15–16, ¶ 63.) Further, as Plaintiff states "[i]t is those unpaid Waiver of Premium Benefits that the Plaintiff was forced to pay which form the alleged breach of contract in this case and it is the amount of those unpaid benefits which underlies the amount in controversy here." (ECF No. 7 at 5.) This is not an action to collect life insurance benefits and Plaintiff does not allege to be entitled to the full contract value of these policies at this time.

To support their claim that Plaintiff seeks the full contractual sum, Defendants claim Plaintiff alleges he is seeking "contractual sums and benefits due to Plaintiff under the subject policies" at three different paragraphs in the Complaint. (ECF No. 9 at 2.) However, this

supposedly quoted language does not appear in any of the paragraphs Defendants claim and instead appears only in the broad prayer for relief.   (*See* ECF No. 1–1 at 21–22.)   Because Defendants offer no evidence that Plaintiff is seeking the total contract value of $1,775,000, Defendants cannot use this sum to meet their burden of proof.

Defendants also argue that even if the claim is less than the total value of these policies, the amount in controversy is still met because the contract premium for the five policies is $14,401 per year.   (ECF No. 9 at 4.)   This argument is also incorrect.   The amount in controversy requirements do not include future accruing payments under a long–term contract unless the dispute concerns the validity of an entire agreement.   *New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 678 (1936); *see also Beaman v. Pacific Mut. Life Ins. Co.*, 369 F.2d 653, 656 (4th Cir. 1966) ("The significance of the distinction between a contest over a basic right to payment and a contest over payment of certain installment payments, the basic right to payment upon the happening of certain conditions being unquestioned, is … that for jurisdictional purposes the value of the former is its present aggregate value, while the value of the latter is the aggregate of installments alleged to be past due.").   In *Viglas*, an insurance company paid disability benefits for one year then ceased making payments after asserting that the insured was no longer disabled.   297 U.S. at 675. The Court held that the company, even if mistaken in its assessment that the insured was not disabled, had not repudiated the agreement.   *Id.* at 676–77.   Therefore, the insured could not recover damages for future benefit payments that were not yet due.   *Id.* at 678.

Here, Plaintiff has paid the premiums he claims he was wrongly denied in order to maintain these policies.   (ECF No. 9 at 3.)   Nether party has repudiated the contract, and, under *Viglas*, Plaintiff is not presently entitled to the value of future benefit payments regardless of the period

of time that will pass until trial. Thus, the amount of compensatory damages for the breach of contract claim is limited to $3,798, which is the amount of premium payments Ross paid before the filing of the Complaint. (ECF No. 6–1.) The Court cannot consider any future payments.

### 2. *Alleged Bad Faith and Punitive Damages*

Defendants argue the Court should consider punitive damages Plaintiff can recover as a matter of law. The West Virginia punitive damages statute provides that punitive damages may only be awarded in a civil action if the plaintiff "establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code § 55–7–29(a). Punitive damages are further limited to "the greater of four times the amount of compensatory damages or $500,000, whichever is greater." *Id.* § 55–7–29(c).

Plaintiff's request for punitive damages is limited to his claims for bad faith and unfair trade practices violations. (*See* ECF No. 1–1 at 21–22.) Defendants provide no estimate for a punitive damages award and fails to provide factually similar cases. The Complaint also requests compensatory damages under the bad faith claim, but Defendants do not address this claim. (*See* ECF No. 1–1 at 22.) This Court refuses to make an assumption in the absence of any evidence to support it. "To meet its burden, [Defendants] must provide enough facts to allow [this Court] to determine—not speculate—that it is more likely than not that the . . . action belongs in federal court." *Scott*, 865 F.3d at 197. Defendants have failed to do that here.

### 3. Emotional Distress, Annoyance, and Inconvenience

The Complaint requests damages for alleged unfair trade practices. (ECF No. 1–1 at 18–22, ¶¶ 74–86.) Defendants briefing does not refer to this claim but does include a short paragraph addressing Plaintiff's request for emotional distress, annoyance, and inconvenience damages with citations to the unfair trade practices section of the Complaint. (ECF No. 9 at 5.) For clarity, the Court will assume the parties are referring to the damages requested under this claim.

Again, Defendants offer no evidence to assist this Court in placing a value on such relief. *See Price v. PennyMac Loan Serv., LLC*, No. 1:18–cv–00951, 2018 WL 4291741, at *5 (S.D.W. Va. Sept. 6, 2018) (deeming plaintiff's request for equitable relief "too speculative to establish a value in the instant controversy"). This Court will not attempt to conjure a monetary value for these damages when Defendants make no effort to meet their burden with respect to this relief.

### 4. Attorney's Fees

Defendants also argue that this Court should consider the potential award of attorney's fees in calculating the amount in controversy. Defendants, citing *Weddington v. Ford Motor Credit Co.*, 59 F. Supp. 2d 578 (S.D. W. Va. 1999) (Hallanan, J.), assert this case is "more likely than not to incur significant attorneys' fees" due to the large number of defendants and large number of policies at issue. (ECF No. 9 at 6.) This Court in *Weddington* was provided with an estimate of attorney's fees already incurred in the parties' briefing which, in combination with the other figures provided, allowed the Court to conclude that the jurisdictional minimum had been met. 59 F. Supp. 2d at 585. However, this Court declines to make such a leap here because Defendants have offered no factually similar cases and no estimates of a potential award. It is Defendants' obligation to establish the amount in controversy "by the preponderance of the evidence." 28

U.S.C. § 1446(c)(2)(B). Thus, while Defendants correctly assert that this Court may consider attorney's fees in determining the amount in controversy, Defendants must provide factual support for their argument. They have failed to do so here.

In sum, the only damages for which Defendants have provided evidence total $3,798, an amount far short of the $75,000 jurisdictional threshold. Thus, this Court concludes that the amount in controversy is not met, and federal subject matter jurisdiction does not exist in this case.

### B. Plaintiff's Request for Fees and Costs

Plaintiff also requests "his attorney fees, costs, and expenses incurred as a result of the removal of this action. . . ." (ECF No. 7 at 8.) Upon remanding a case to state court, this Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). In other words, "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*

Here, there is no indication that Defendant sought to remove the case to this Court "for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140. This Court acknowledges that "bad faith is not a prerequisite to an award of attorney's fees under §

1447(c)." *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). However, this Court's decision to remand this case is not based on the lack of an objectively reasonable basis for removal; it is instead based on Defendants failure to carry their burden to demonstrate the existence of subject matter jurisdiction. This Court will therefore deny Plaintiff's request.

*IV.    CONCLUSION*

For the forgoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand. (ECF No. 6.) As such, the Court hereby **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia. The Court **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 17, 2019

_____

THOMAS E. JOHNSTON, CHIEF JUDGE